All right, our third case for argument this morning is Bent v. Garland. Good morning. May it please the court? Good morning. My name is Kari Hong. I am with the Florence Project and I With leave of the court, I will reserve three minutes for rebuttal and I'll watch my time. Thank you. I will talk about pickering, due diligence and then the remedy. Starting with pickering, a vacated conviction will not have immigration consequences if it is based on a legal or constitutional defect. Here, the state court order expressly found that Mr. Bent had entered an involuntary plea in violation of the Fifth Amendment to the U.S. Constitution. The state statute, the state court order and the stipulation prove that Mr. Bent's vacatur was based on a constitutional violation. Under Bolinas-Lucero and under Nass, this court has the authority to hold that Mr. The government is asking for remand and they want remand for the BIA to investigate whether the California Penal Code of 1473.7 can properly vacate a conviction based on the person's subjective beliefs, but there are many reasons why this is improper. First, pickering itself says that when an immigration law will never question whether the state court properly applied its own law. It's quote, pickering said, we would not look behind the state court's judgment to ascertain whether the court acted in accordance with its own law. Did the court then conclude in this case that it was a constitutional violation? No, the BIA had selective quotes where the BIA said this, this is probably due to a hardship and the B and the government attorney did not defend that. But the state court did determine that. The state court determined that there was a constitutional violation and it was a Fifth Amendment involuntary plea and had nothing to do with immigration hardships. Now, the second reason why it's improper to remand is that the BIA has granted motions to reopen to people like Mr. Bent, who are lawful permanent residents whose convictions had occurred years ago and who recently obtained a state court order that vacated their conviction in full. At the opening brief and in the Rule 28J letter, there are four BIA cases in which the board reopened proceedings for a non-citizen's conviction when a non-citizen's conviction was vacated under this very statute of 1473.7. Now, turning to due diligence. The BIA claimed that Mr. Bent was not diligent in seeking relief, but it did so by looking at the 2006 start of the removal proceedings or in 2016 when he was, I'm sorry, 2006 when he was first convicted, 2016 when he was first ordered removed. Now, Mr. Bent's post-conviction order was on June 7th, 2022. His motion to reopen was filed 31 days after that date. The government never argues why 31 days does not meet due diligence, and that's why remand isn't needed. Matter of demurchian, the BIA granted a motion to reopen that was filed 66 days after the 1473 order. I don't even know how we get there because, I mean, based on the last case in the discussion of due diligence, you know, we start with when would a reasonable person understand that the error that they're ultimately going to rely on for reopening happened? So here it's a similar one, right? Like I didn't fully understand the immigration consequences that were going to happen from this conviction. You agree that's his ultimate error? No. There's something different because in this situation, his conviction, he vacated his conviction and that vitiated all grounds of removability. As a green card holder, he got his status completely restored. Now, the BIA has- What's the basis for him getting that relief, though? Wasn't it tied up into I didn't understand the immigration consequences? It was, but it's post-conviction relief, and under the new regulation of- But that analysis asks us to what is the ultimate error that you're relying on for reopening proceedings? What was that error and when did you have reason to know about it? And the way I read the record in this case, the error ultimately is I pled guilty and I didn't fully understand the immigration consequences of that choice. Am I wrong? With all due respect, there's a separate track for post-conviction relief that vitiates all grounds of removability. But my point is the reason for why he got post-conviction relief was still that underlying I didn't understand the consequences of pleading, right? Yes, and that error comes in effect on the date of the vacator, which is in June 2022. Why doesn't that error, why doesn't notice of that problem come about when he knows that immigration proceedings are being brought against him because of that conviction? The BIA treats that differently. Under the new regulation, under subsection B, it says the movement or the movement exercised due diligence in pursuing the motion to reopen. So that happens after the vacator is achieved. And that motion codifies the prior existence, which the prior practice, which is under matter of Demerchian, under matter of Limón Castro. Where in that situation, Limón Castro granted the motion to reopen filed 75 days after the 1473 vacator, which was vacating conviction that was 16 years old. I don't understand the argument and how it jives with Perez Camacho. Well, under, this is a different track when it goes, what, how so does it not jive with Perez Camacho? Perez Camacho talks about reopening and due diligence in the context of reopening. And the analysis is, when did you have notice of the problem that ultimately leads you to want to reopen? State, state vacators are treated differently. In the Rule 28J letter that I filed yesterday, there's an October 23rd, 2023, or 2023 BIA decision. And in that decision, it says that if due diligence is part of the New York state criminal procedure, we defer to that because the state vacator, or the state procedure inherently made that finding. So that argument would suggest that there is no due diligence requirement in seeking post-conviction relief. No, there is. But it starts when the vacator has been issued. Wait, wait, wait. The vacature is the result of post-conviction proceedings. So if there's a due diligence requirement that you even get to post-conviction, like that you try to get post-conviction relief, it cannot be the vacature as the trigger because that's the result of post-conviction relief. Under Braithwaite, there, the due diligence question, the D.H. says the person wasn't due diligent in filing a late appeal under the New York procedure. There, the BIA said we cannot substitute our judgment for the state court proceedings. And there they said they looked at the New York state law and said because due diligence is baked into the state criminal procedure, it was inherently part of the finding. Likewise, here, under People v. El Tori, the state court, the California says due diligence is baked into being granted the 1473 vacature. So under the BIA precedent. I guess I see those entirely different. I understand. There is a due diligence aspect to post-conviction relief, no doubt. But what we're talking about in this case is the due diligence requirement related to reopening. And those are not necessarily the same thing. We're having a disagreement because I see it as, and not only do I see it, but the BIA treats vacatures that vitiate all grounds of removability different. That those vacatures are granted 16 years, 12 years, 18 years after the conviction. Where the time doesn't start at the date of conviction, the time doesn't start at the date of removal. The time starts after the person gets the post-conviction relief. Say a little bit more about your case and the kinds of cases that, if you were here earlier, we were talking about in distinction. Why don't you do that? Yes, the difference is that here, when there's a post-conviction relief that occurs after a final order removal that vitiates all grounds of removability, the BIA treats that differently and gives it favored status. There, the BIA says that there's no time limitation. There's only one numerical limitation under the new regulation of C35A. And under B, that regulation says due diligence is timed and pursuing the motion to reopen, which is 31 days. It does not relate to the underlying conviction. It does not relate to the removal order. In fact, subsection A says any material change that vitiates all grounds that occur after a final order removal. So unlike every other situation in immigration court, there's an exception given to post-conviction relief that vitiates all grounds of removability. Not only is that in the regulation, but in the two cases, matter of Demurchian and matter of Limo Castro. There, it was a 20-year-old conviction, but it was 66 days after the 1473 order. And there, it was a 16-year-old conviction that was held 75 days after the post-conviction relief. So Mr. Bent should be considered under the past practice of matter of Demurchian and under matter of Limo Castro. And his 31 days absolutely fall before the 75 days, and they fall before the 66 days, which is treated differently than every other person. And the regulations, even the ones that were enjoined under footnote 9, the court makes very clear that when the post-conviction relief vitiates all grounds of removability, it's treated differently. And here, I just want to clarify on a separate point. There are two things that are before us, a direct appeal and an appeal on a reopen, correct? Yes. All right. So the due diligence discussion in your mind applies to both? No. Okay. It only applies to the motion of relief. And that's on the third point for remedy. If the court agrees with me on Pickering and agrees with me on due diligence, the proper remedy is Bolinas-Lucero, which is to find that Pickering applies and then to remand to terminate proceedings. If the court disagrees with me, and the government calls for remand, I would argue that the proper remedy is not to sever these matters, but traditional economy serves to remand the appeal and remand the cat, because the BIA could very much determine that the conviction is vacated, and those two issues become completely moot. Want to save your time for rebuttal? Yes. Thank you. Thank you. May it please the Court, Your Honors. Tim Remnitz on behalf of the United States Attorney General. The government proposes to address removability first, and then its motion to remand unless the panel prefers otherwise. But starting with removability, this case has once before been before this Court to look at whether his attempted murder conviction, Mr. Bent's attempted murder conviction, constitutes a removable offense. That is, whether it constitutes attempted murder as an aggravated felony under the INA. The first time it was before this Court, it was a categorical question, because when the government conceded, it was categorically overbroad, but then we were able to establish the visibility before the panel, and when you establish the visibility, you can look to the record of conviction to determine the offense of conviction. Now, what we have to determine is if the record at this point shows whether he was convicted of attempted murder of a human being or attempted murder of a fetus, because the federal definition of murder did not cover attempted murder of a fetus at the time of his conviction. I think at this point, we have the plea colloquy, which was not in the record last time. We have the criminal information and the judgment, which all clearly show there was no fetus involved in this case. You're looking at the plea colloquy in a case where the court, the state court, has determined that there's a violation under this particular state statute, a constitutional violation. Isn't that what the state court decided? Oh, we can discuss the motion to remand. I'm more than happy to start with that first. We propose to also have the court address removability, because if this is not a removable offense, we don't have to get to the complicated question of vacature, which is a very complicated question. But addressing our motion to remand for further consideration of the vacature statute, the reason why we said the board erred in this regard is because the board's decision states that explicitly on its face, this statute is for rehabilitative vacatures. We agree that's not right. That's incorrect. This statute on its face talks about legal invalidity for an involuntary plea. That's what Mr. Bent's record also states, that California vacated his plea as an involuntary plea under the Fifth Amendment of the United States Constitution. What the board needs to consider is that proper background. And furthermore, as we explained in our briefing about the motion to remand, is they have to consider what this involuntary plea means under California law and whether it fits federal law. Because California has crafted a new definition of a voluntary plea that applies only to removable noncitizens. And this definition of involuntary plea is something that the federal government has never seen before. It's new. They've pioneered a very broad, expansive definition of involuntary plea. And walking through the mechanics of that, it's that under this California vacature statute, you don't have to have erroneous advisals about the immigration consequences. You can be properly informed of the consequences of your plea under this California vacature statute. You can outwardly say, I understood the consequences of my plea during the plea colloquy. And yet, years after the fact, you can still come back to a California court and say, I subjectively, internally, did not understand the consequences of my plea. Citing evidence that's not even from the criminal proceedings. And in this way, petitioners are bribed. Why would the board be able to do that? How does that comport with our full faith and credit jurisprudence? Why are we allowing the board to go back and look at, gee, did the state court apply its statutes correctly, its constitution correctly? Well, not its statutes correctly, but whether or not it's applying the U.S. Constitution correctly. So federal immigration law is, of course, determined by federal law. As Matter Pickering says, you're interpreting congressional statutes. And in no area of law is Congress authority more exclusive and plainer than immigration. So a congressional statute is interpreted in accordance, or immigration statutes are interpreted in accordance with federal law and U.S. Supreme Court decisions. They're not historically interpreted as to what a state says the U.S. Constitution means. So California can say whatever it wants about what it believes the Fifth Amendment covers. But so far, what it says it covers, the federal government has never said that's what the Fifth Amendment covers in an involuntary plea. And that is the legal background. It's complicated that way, and that's why the board has to have an opportunity to say, do we want to recognize these new boundaries of an involuntary plea? Because under federal law, which is what governs immigration statutes historically, they've never gone so far. When you have a subjective misunderstanding of a plea of federal law, the most it's recognized is evidence from the plea colloquy of basically mental disturbance or bizarre behavior at the plea colloquy. I guess I don't understand why the BIA is going back to that plea colloquy because we have a court in that jurisdiction that has conclusively said that it is a violation under this particular statute. That should be the end of our discussion, should it not? No. The plea colloquy, we are using that just to establish what offense he was initially convicted of, which was attempted murder of a human being. The vacature says that he was not informed of the immigration consequences of the plea, so we're vacating his conviction for attempted murder of a human being. So the plea colloquy really only speaks to the removability question, and there's a separate question which the board has to answer, whether or not to recognize this vacature. So if there's no question the plea colloquy shows he was convicted of attempted murder of a human being, which I don't think there is, it's pretty clear, then the next question is whether or not that conviction was vacated under a law that the federal government recognizes. So, and getting back to that... On that, so I mean, I guess I'm going to interrupt you here. Why is the government not arguing diligence? Well, because we believe the board could come back on remand and say, you know, we're going to adopt this California law. We believe that federal law should extend that far, should extend to subjective internal misunderstandings of the immigration plea. I guess I don't understand that, because the board's decision was the motion to reopen is untimely, and denied it on that basis. And in order to reverse the board, we would have to say that that was incorrect. And the government's not making an argument that the agency was incorrect in finding it untimely. No, we're not making that argument because if the board finds this to be a substantive vacature, it's pretty rare that the board will nonetheless find that someone has an active diligence in pursuing that vacature. So we think the questions are wrapped up together. If they were on remand... The authority, what's the authority for that? Just practice for the board. We have not seen many, I'm not sure the court has seen many either, where there's been a substantive vacature. They've said that you should never have been convicted of this offense. And the board says, well, still, you didn't timely pursue this, so we're still going to deny your motion to reopen. We just don't see that very often, so we... I mean, I get that point, but I guess, I mean, we're an appellate court. We're looking at the law, and I'm trying to figure out in terms of a legal statute or regulation that you can point to me to show me that the board was erroneous in saying that this motion was untimely. I'm not finding it. Oh, I think that's correct. I think the diligence finding is supported on the record, because at the very least, he knew in 2019, when the board issued a final order of removal based on his attempted murder conviction, there was immigration consequences. You didn't make that argument in your pleadings that you're making right now, correct? That's correct. Okay. Because we think that diligence finding is supported, but we're just not certain the board would still deny for lack of diligence if it on remand finds a substantive vacature, because that is rare. It's just very remarkable to me that the government is asking us to remand for the agency to redo something that it's not telling us was an error. There's error in the substantive where it looks at the vacature statute. So we are saying that was a reason. But that's a separate. I mean, the board said, I'm denying this is untimely, and then also addressed the merits. So we've got two reasons, and either one of them all by themselves supports what the board did, and so the government is here saying send this back because the board made a mistake on only addressing one part and not the other independent part. If the court wants to affirm on diligence, we're not going to object. We just believe it's uncertain the board would come to that same conclusion if it was to find a substantive vacature. And waiver is probably the wrong word, but the government is kind of waiving its argument, even though it could make an argument with regard to being untimely, it didn't do so. And so that would be a basis, it seems to me, for a possible basis for not taking on that issue. Government waiving the argument? I'm not sure the government can waive arguments in answering briefs, but we argue for remand. We had a footnote saying we want diligence considered as well. So we're not waiving diligence. We just think it should be considered, again, as part and parcel of whether or not this California vacature statute, which is a new issue of federal law, something federal law has never seen before, that that has to be considered together. And this is a common practice in your practice, is that right? It's common for when they find a substantive vacature that they will reopen. Right. But there are good reasons for the board to depart from California law, and that's what the board has to consider. Because, again, federal law has never recognized such a broad definition. You can even look at Mr. Bent's own record to show how expansive this new definition of involuntary plea is. Because Mr. Bent was granted vacature for subject to misunderstanding. He admitted in his testimony he was informed of the immigration consequences of an attempted murder plea. He said he understood them, but yet he internally did not understand, and he got relief by the court. And there's not even an explanation of why, because under this California statute, under subsection E-4 of that same vacature statute, the court doesn't have to explain their reasoning. They just can grant someone who says, I didn't believe or didn't understand the consequences of my plea internally, that they get relief. And that's broader than the federal government has ever defined involuntary plea. You have to have, if you're going to claim a subjective misunderstanding, well, actually, I think Petitioner's citation to Lee versus United States in the plea brief is very helpful. That is where federal law is at. And that walks through how that person was erroneously informed of the consequences of their plea. So right there is a departure from California law. You're asking us to say that 1473 is unconstitutional, that the application of it here was improper. We just don't know. I mean, we're saying that federal law has never considered such an expansive definition of involuntary plea. You're challenging the statute, though. The California statute? Yes. Not as unconstitutional, because the board can't declare a statute unconstitutional. The board just interprets its authority, like congressional statutes about criminal immovability, in accordance with federal law. That's federal law. It's always going to govern what the board does. And federal law has never recognized such an expansive definition of an involuntary plea. And we're going to allow the BIA to go behind the orders of state courts throughout the Ninth Circuit and question whether or not their application and understanding of their Constitution, their application of their statute, comport with the Constitution. Is that correct? We're not going behind the statute. We are conceding that California believes this is what the Fifth Amendment covers of the U.S. Constitution. But we're saying there's no precedent for that. California has created this definition for which federal law has never gone so far. So California has pioneered this new definition of an involuntary plea. So we're not going behind what California does. We are saying this is what California does, but the federal government has never gone that far in defining an involuntary plea that way. So the board, as a creature of federal law, gets an opportunity to say, are we going to adopt this expansive definition of involuntary plea, which the federal law has never, ever gone so far? And that is Lee v. United States, which I was about to discuss, where Lee, first of all, that's a Supreme Court case. The California law cites sometimes a justification for this vacature statute in which petitioner cites in their reply brief. Lee, first of all, required erroneous advice from counsel about immigration consequences. This California law doesn't require that. You can be perfectly informed, you can say I understood, and still get a vacature. Lee next goes to the plea colloquy, where at the criminal proceeding itself, Lee said, I don't understand the consequences of my plea. So those, and that California law doesn't require that either. You can cite to something years after the fact of your criminal proceeding as evidence of your subjective misunderstanding, and that's where a petitioner's reply brief is also helpful. It cites People v. Alatorre. In that case, there was no erroneous advice about immigration consequences. And when it came to proving his subjective mindset, they cited the fact that he filed a naturalization application years after his criminal proceedings. Federal government, federal law at least, when it talks about involuntary pleas, has never so broadly allowed a criminal defendant to claim a subjective misunderstanding based on an application filed years after the fact. It always has to be something at the criminal proceeding saying a bizarre behavior or mental instability. That is objective evidence of someone's mindset at their plea hearing, not an application filed ten years after the fact. And also, it has to be some kind of erroneous advice from counsel. So federal law has never gone so far as California. And moreover, the board's going to have to consider whether or not this California law invaded federal territory. I mean, it's legislating just for noncitizens. This is a law crafted for and applicable to only criminal noncitizens. Removing criminal noncitizens and defining when they're removable is the federal domain. I mean, that's – I see my time is running out, but are there any further questions for the panel? Ms. Pearson, thank you for your argument. I have three points. First, I'd like to thank the kind concession by my brother. As an officer of the court, that is my experience, too, for 20 years of practicing in immigration law. In the situation when the BIA receives a post-conviction relief for a lawful permanent resident that initiates all grounds for removability, it just grants it without the discussion of the due diligence. Now, second, Judge Flores, I know that you're uncomfortable with not having authority. The authority under the fed regulation of the Enjoined Regulations 81591 is the page where the regulations or the federal register explains. It's part of the Enjoined Regulations? This is part of the Enjoined. But this explains that when the aliens whose removability is vitiated in toto prior to the execution of the removal order, they retain a mechanism for reopening those proceedings and goes on to explain without the numerical or time limitations. Footnote 9 explains that. I mean, okay, so if that's part of the Enjoined Regulations, that's the problem, right? I mean, we're not applying the Enjoined Regulations because they're under an injunction and the government didn't ever challenge that injunction. Correct, but what's relevant about this, and footnote 9 explains this provision only applies to the intervening change, vitiates the aliens' removability completely. This explains the prior practice, which is reflected in the four cases that I've been citing to you. So it's under matter Demerichian, under Limo-Castro, under Sacco-Cotito, under Sotelo. Every single one was the 1473 California post-conviction statute. Everyone involved a long conviction or a conviction from many, many years ago and a recent post-conviction order. I mean, that's helpful, and I appreciate you clarifying that, and I will go back and study what you're saying. So it explains the prior practice. Those four cases reflect the prior practice completely as it's explained. And then in the new regulations, which are not in effect and there's no reason why they would be, they also explain repeatedly that when there's a motion to reopen that vitiates all removability, they treat that differently. So just to give you comfort that this is treated differently by the board. It has been for decades, and it's contemplated even under the enjoined rule, they separated that out and codified it under C-5-3 to make that a new rule, even under more restrictive regulations. And under the new one, when they're trying to ameliorate the more restrictive part, they contemplate restoring, retaining is the language that they use to keep that in place. The third point is that no remand is needed. My brother conceded that Pickering simply is met when there's a showing of a Fifth Amendment violation, which the state court order does. And Brace White and Pickering explain that the BIA does not go behind state criminal procedures. It accepts it at full faith and gives full faith and credit to a valid court order, which is what we have here. And if there are no further questions. Thank you, counsel, for your helpful arguments. The matter of Vent v. Garland is submitted.
judges: FORREST, MENDOZA, Oliver